IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| REGINALD BEVERLY, an incapacitated person, by RONALD BEVERLY, Conservator,<br><br>Plaintiff,<br><br>vs.<br><br>CHUCK CASEY, JOHN BAHLE, JASON SLOSSON, DOUG HEROUT, and SGT. RUSS HORINE, Individually and in their official capacities as police officers for the City of Omaha, and the CITY OF OMAHA, Individually,<br><br>Defendants. | CASE NO. 8:05CV393<br><br><br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Defendants' Motion for Summary Judgment Based on Qualified Immunity. (Filing No. 31). For the reasons stated below, the motion will be granted.

### PROCEDURAL BACKGROUND

The Plaintiff Reginald Beverly ("Beverly"), an incapacitated person, through his conservator, filed this action in the District Court of Douglas County, Nebraska, on July 8, 2005, and the Defendants removed the case to this Court on August 10, 2005. The Complaint (Filing No. 1) alleges that on August 1, 2003, the Defendants Chuck Casey, John Bahle, Jason Slosson, Doug Herout, and Sgt. Russ Horine, all employed by the Omaha Police Department, attempted to arrest Beverly at 813 North 47th[1] Street in Omaha, Nebraska, for use of an "illicit substance." (*Id.* ¶¶ 8–9). When Beverly refused

---

[1]Although uninfluential to my decision, I do note that Beverly's Complaint states the relevant address as 813 North 47th Street (Filing No. 1, ¶ 8), while the Defendants' brief in support of their motion for summary judgment states the address as 813 North 48th Street (Filing No. 33, ¶ 1).

repeated commands to exit the building, Horine directed other Defendants to deploy pepper spray and pepper balls. (*Id.* ¶¶ 11–13). As Defendant Slosson fired pepper balls at Beverly, Beverly exited the residence. (*Id.* ¶ 14). The Complaint implies that one or more of the Defendants then tackled Beverly, wrestled him to the ground, placed him in a choke-hold, and handcuffed him. (*Id.* ¶ 17). The Complaint states that Beverly was taken to a hospital by medics, examined by a physician, medicated, and later found to be unresponsive and incapacitated. (*Id.* ¶¶ 18–20). The Complaint alleges that Defendants Casey, Bahle, Slosson, and Herout knowingly used excessive force by deploying pepper spray or pepper balls at Beverly who was in a drug-intoxicated state, and by attempting to restrain him; and that the Defendant City of Omaha provided improper training for the other Defendants. (*Id.* ¶ 21). The Complaint asserts claims under 42 U.S.C. §§ 1983 and 1988, and state tort-based claims against Defendants Casey, Bahle, and Slosson for assault and battery, and against Herout, Casey, Bahle, and Slosson for "outrage." (*Id.* ¶¶ 2, 23, and Prayer for Relief).[2]

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which grants original jurisdiction to federal district courts over federal questions; 28 U.S.C. § 1367(a), which grants supplemental jurisdiction to federal district courts over claims that are so related to the original jurisdiction claims that they form part of the same case or controversy; and 28 U.S.C. § 1441, which permits removal of claims to federal court when arising under the Constitution or laws of the United States.

---

[2]The Plaintiff's claims under Neb. Rev. Stat. § 20-148, his claim against Horine based on alleged negligent supervision, and his state tort-based claims against all Defendants in their official capacities were dismissed on February 6, 2006. (Filing No. 10).

The Defendants moved for summary judgment, asserting that they are entitled to qualified immunity from suit. (Filing No. 31). The Defendants' motion is supported by an index of evidence and brief. (Filing Nos. 32, 33). The Defendants' brief complies with the Court's local rules by setting out a "statement of facts consisting of short numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials relied upon to support the material facts recited in the that paragraph." *See* NECivR 56.1(a)(2). The Plaintiff requested, and was granted, an extra thirty days to respond to the Defendants' motion, and he submitted a brief in opposition to the motion (Filing No. 37), but no evidence. The Plaintiff's brief does not comply with the Court's local rules, because it contains no response to the Defendants' statement of material facts, addressing each numbered paragraph and, in the case of disagreement, making pinpoint references to the evidentiary materials upon which the Plaintiff relies. *See* NECivR 56.1(b)(1). Accordingly, the properly referenced material facts in the Defendants' statement are deemed admitted. (*Id.*)

**FACTS**

The following facts are set forth in the Defendants' brief (Filing No. 33, pp. 1–8) with pinpoint citations to the evidentiary record (Filing No. 32) in accordance with NECivR 56.1(a)(2), and have not been controverted by the Plaintiff.

On August 1, 2003, at approximately 8:20 p.m., Officers Chuck Casey, Jr., and John Bahle received a 911 dispatch to 813 North 48th Street in Omaha, Nebraska, regarding a party who refused to leave the premises. When Officers Casey and Bahle arrived at the

premises, they met the calling party, Elizabeth Broekemeier. She directed the officers to Reginald Beverly who was sitting on a couch in her living room, smoking what appeared to be crack cocaine. Officers Casey and Bahle repeatedly identified themselves to Beverly as police officers, and repeatedly requested that Beverly put down the drugs and come out of the residence with his hands up. Beverly ignored all of the requests, and responded "I am God."

Broekemeier advised Officers Casey and Bahle that if they touched Beverly, he would fight. The officers could see Beverly clearly and observed that he was wearing only boxer shorts and that he had a very muscular build. After several unsuccessful attempts to persuade Beverly to come outside, Officers Casey and Bahle mutually decided to radio for back up, requesting an officer with a pepper ball gun. They based this decision on (1) Beverly's refusal to put down the crack cocaine and exit the premises, (2) Broeckmeier's statement that Beverly would fight if they touched him, (3) their observation that Beverly was "high" on drugs and their training and experience to the effect that people who are intoxicated on drugs often have extraordinary strength and tolerance for pain, and (4) the fact that the room in which Beverly was sitting was very small. The officers concluded that a use of force other than hand-to-hand combat was prudent to reduce the risk of injury to themselves and to Beverly.

Officers Herout and Slosson arrived in response to the call for assistance. They identified themselves to Beverly as officers and repeatedly asked him to put down the drugs and come out of the residence with this hands up. Sgt. Horine contacted Slosson and advised him not to deploy pepper balls until Sgt. Horine arrived on the scene to assess the situation. When Sgt. Horine arrived on the scene, he also identified himself to Beverly

as a police officer and repeatedly requested that Beverly put down the drugs and come out of the residence. Sgt. Horine assessed the situation, and determined that any attempt to apprehend Beverly physically would result in a confrontation that would expose Beverly and the officers to potential injury. Sgt. Horine then ordered Herout to deploy pepper spray. Officer Herout advised Beverly that if he did not comply with the command to put down the drugs and come out of the house, Beverly would be "maced." Beverly did not comply with Herout's directive, and Herout deployed two short bursts of pepper spray in Beverly's face. The spray had no apparent effect, and Beverly continued to smoke the crack cocaine.

Sgt. Horine then ordered Slosson to deploy pepper balls, a non-lethal force designed to cause pain on impact and temporary incapacitation, without any permanent injury.[3] Slosson was certified in the use of pepper balls through the Omaha Police Department, having completed an eight-hour course of training in their proper use. Slosson fired several rounds of pepper balls at Beverly's legs. Beverly responded by pulling his legs closer to his body. Sgt. Horine then advised Slosson to deploy pepper balls at Beverly's upper body. Slosson fired another three to five rounds, one of which struck Beverly's hand, knocking out of his hand the can he was using to smoke crack cocaine. Beverly then ran out of the house, highly agitated, flinging his arms and refusing to obey the officers' orders to get down on the ground. Officer Slosson hit Beverly with another pepper ball round, and Beverly ran from the scene. After a brief pursuit on foot, Beverly

---

[3] It is uncontroverted that the pepper balls are fired with compressed air, striking with eight to ten foot pounds of kinetic energy, and releasing oleoresin capsicum powder on impact. (Filing No. 33, ¶¶ 43–45).

slipped and fell on gravel in the street, and Officer Bahle gained control of him. Officers Bahle, Casey, Herout, Slosson, and Sgt. Horine together placed Beverly in handcuffs and secured flex cuffs around his ankles, as Beverly continued to struggle. Once Beverly was on the ground, no officer used pepper spray, pepper balls, or any other force.

A rescue squad transported Beverly to the University of Nebraska Medical Center/Clarkson Hospital. Officer Casey rode in the ambulance with Beverly, who remained combative. At the hospital, ten to twelve people, including officers, nurses, hospital security guards, and fire department personnel, worked together to keep Beverly on a stretcher, because he remained combative. Hospital staff administered three sedative injections to Beverly, and his breathing was interrupted. He remains incapacitated.

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

Qualified immunity from suit under 42 U.S.C. § 1983 is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set out a two-step process for analyzing a defendant's qualified immunity from suit under 42 U.S.C. § 1983. As a "threshold" question, a court must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated

7

a constitutional right. *Id.* at 201. If the court finds that no constitutional right would have been violated were the allegations established, then there is no need for further inquiries concerning qualified immunity. "On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry . . . must be undertaken in light of the specific context of the case. . . ." *Id.* For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, "[i]f the law did not put [the defendant] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202.

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen, should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). In this case, there is no question that a seizure occurred, only whether the force used to effect Beverly's seizure was objectively reasonable under the Fourth Amendment. *Graham* sets forth a list of factors relevant to determining whether the force exerted was excessive and in violation of the Fourth Amendment. The analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The proper perspective

in judging an excessive force claim is that of "a reasonable officer on the scene" and "at the moment" force was employed. *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving. . . ." *Id.* at 396–97.

Although the Complaint alleges that the Defendants "knowingly used excessive force to restrain Plaintiff" which was "objectively unreasonable under the Fourth Amendment," (Filing No. 1, ¶ 21), the Plaintiff has produced no evidence in opposition to the Defendants' motion for summary judgment, and the Plaintiff's brief in opposition to the Defendants' motion (Filing No. 37) does not dispute the Defendants' statement of uncontroverted facts. Instead, the Plaintiff merely raises six alleged uncertainties that he contends preclude summary judgment, *i.e.*, (1) whether the restriction of oxygen to Beverly's brain was caused by cardiac arrest or by the cessation of his breathing, (2) whether the Defendants complied with all provisions in the Omaha Police Department training materials when deploying pepper balls at Beverly, (3) whether Broeckemeier clearly advised the Defendants that Beverly would be physically violent if challenged, (4) whether one of the officers may have left the scene to retrieve a billy club from his vehicle, (5) which officer or officers actually subdued Beverly, and (6) whether Sgt. Horine told Broeckemeier to vacuum and ventilate her home as he was leaving the scene. (Filing No. 37, pp. 4–7). The Plaintiff has not come forward with specific facts showing that there is a genuine issue for trial, but has only raised metaphysical doubts about issues that are not material to the resolution of the case. Accordingly, the Plaintiff has not met his burden of responding to the Defendants' motion.

Nevertheless, the *Graham* factors should be considered in determining whether the Defendants are entitled to qualified immunity from suit under 42 U.S.C. § 1983. First, it is undisputed that Beverly was smoking crack cocaine at the time of his arrest, and that he was in the residence of Broeckemeier against her will. Knowing or intentional possession of a controlled substance such as crack cocaine was a felony under Nebraska law at the time of Beverly's arrest. Neb. Rev. Stat. § 28-416(3) (Supp. 2003). Criminal trespass was a misdemeanor. Neb. Rev. Stat. §§ 28-520, 28-521 (Reissue 1995). Second, it is undisputed that Broeckemeier called 911, an emergency line, asking that Beverly be removed from her home, and that she warned the Defendants that Beverly would fight if touched. Accordingly, it was reasonable for the Defendants to conclude that Beverly posed a threat to the safety of Broekemeier and that Beverly could pose a threat to the safety of the officers. Third, Beverly refused repeated commands by the Defendant officers as they attempted to persuade him to stop smoking his crack cocaine and exit the premises, and the Defendant officers used lesser force, *i.e.*, pepper spray, unsuccessfully before resorting to the use of the pepper balls. Accordingly, it was apparent that some level of force greater than the use of pepper spray alone was necessary to effect Beverly's arrest.

Based on a careful review of the facts and circumstances of the case, including evidence of the nature of pepper ball projectiles and the level of injury likely to result from their use, it is clear that the Defendants did not engage in an unreasonable seizure, and, therefore, no constitutional violation occurred. If it were necessary to proceed to the second step of the *Saucier* qualified immunity analysis, it is also clear that reasonable officers on the scene at the time of Beverly's arrest would not have considered the force

used by the Defendants to be excessive and, accordingly, the Defendants are entitled to qualified immunity from suit.

## CONCLUSION

The Defendants have demonstrated that there is no genuine issue of material fact remaining for trial, and that they are entitled to qualified immunity from suit under 42 U.S.C. § 1983. While the Court could decline to exercise supplemental jurisdiction over the Plaintiff's state tort-based claims, the uncontroverted evidence produced in support of the Defendants' Motion for Summary Judgment demonstrates that the Defendants are entitled to summary judgment on those claims as well. Accordingly, the Defendants' Motion for Summary Judgment is granted with respect to all claims and the Plaintiff's Complaint will be dismissed, with prejudice.

IT IS ORDERED:

1. The Defendants' Motion for Summary Judgment (Filing No. 31) is granted in favor of all Defendants, Chuck Casey, John Bahle, Jason Slosson, Doug Herout, and Sgt. Russ Horine, in their individual and official capacities, and the City of Omaha;

2. All claims in the Plaintiff's Complaint are dismissed with prejudice; and

3. A separate Judgment will be entered.

DATED this 7th day of February, 2007.

BY THE COURT

s/Laurie Smith Camp
United States District Judge